We'll turn to U.S. Bank National Association against Dexia Holding. Good afternoon. May it please the Court. Greg Cross on behalf of U.S. Bank. The District Court made multiple errors in the decision that's before you, but I think that you can decide this case based upon just the clear language of the two contracts that are at issue. The first is the Mortgage Loan Purchase Agreement. That was between Dexia and Wachovia. And in that agreement, Dexia agreed that Wachovia could assign any part of the contract in whole or in part, and it further agreed that the assignee of those rights would succeed to the rights and obligations only to the extent of such assignment. Now, in the Pooling and Servicing Agreement between Wachovia and the other parties to the trust, Wachovia assigned in Section 2.01 its right to recover attorney's fees. There's no mention in Section 2.01 of the word obligations. Dexia bargained for the right in the MLPA to review and approve that very language in the Pooling and Servicing Agreement. So they were, they acknowledged in the- Do you think they're stopped from arguing otherwise? I think they are stopped from saying otherwise, but New York law will stop them because New York law requires, what's the words, I keep wanting to say the wrong thing, an unmistakably clear articulation of an assumption of obligations. There's nothing unmistakably clear about 2.01a that would say that the trust undertook the obligation to pay attorney's fees. The word isn't even there. And it's not a fair reading of the Pooling and Servicing Agreement to impart obligations into rights. Six different places in the Pooling and Servicing Agreement, the words rights and obligations are both used. You say you don't have, you're not arguing that Wachovia is the one who retained the obligation, just that the obligation kind of disappeared. Correct. Right, the section 16 terms otherwise are imported, but there's no one to pay. Correct, because Wachovia wasn't- Well, it does make sense. Well, it does make sense because the way the section reads, they have to both be parties to the transaction in order for Wachovia to undertake and incur an obligation. And it makes sense in the context of the document because when the PSA said rights and obligations, it said it six times and it didn't just say rights and it always inferred obligations. But more importantly, you know, Dexy was asked during the hearing below, what is your best example that obligations is included in rights? And counsel said, well, the obligations under the MLPA require notice to be delivered, there are time periods with respect to the repurchase. If you include just rights and rights doesn't include those obligations,  but if you look at the PSA in section 2.03, it expressly restates all the obligations from the MLPA. Now, that would be completely improper if the word rights used in 201 already included obligations. Why would you do that? It might be superfluous, but not improper, right? I mean, these are complicated and lengthy documents and there are several parties involved here. What's your position with regard to whether the bank retained an obligation to recover its attorney's fees, whether the trust did by virtue of this assignment process? Trust definitely retained the right. It did. And that's the way the documents work. So if you survey, while the case in 2014 was decided by Judge Shindlin, she said it had only been rights and not obligations. She wasn't really addressing this particular question at the time. Yes, she was. You were seeking a cut to recover. Her question, the question in front of Judge Shindlin was, with respect to the MLPA, were the rights and obligations transferred? And she ruled with respect to the contract, looking at the same language in the pooling and servicing agreement, that no obligations were transferred under the pooling and servicing agreement. So it was not unique to that circumstance. She was ruling a blanket with respect to the contract. A contract is a contract. So if the obligations were not assigned, and in New York every case has said it has to be an unmistakably clear assumption of those rights. Sure, but the district courts, it focuses on the word interest and the construction of Section 18 and the PSA Section 2.01A together. And it looks like, I think I agree that it's garbled, but there is a textual, a plain text that says we focus on the word interest, and that picks up rights and obligations. It can't pick up rights and obligations. Why not? Because if it picked up rights and obligations, you would have the superfluous language. If it picked up rights and obligations, if it picked up rights and obligations, it would be inconsistent with the way these documents read. You survey all the cases out there. There's never been a CMBS case that had a reverse obligation. That's not the way these documents work. It's written this way intentionally. Dexia had the opportunity to review these documents. That should be construed against them. You know, in 2014, Judge Shindlin had it right. There was no finding of a cogent or compelling reason to abandon that decision. There was no change of law. There were no facts. There was no manifest injustice. We didn't make any of those findings. The trial court here said I can summarily in my discretion disregard the prior ruling and do so by surprise. I never had a chance to bring an expert in to say this is the way that documents were written. I never had the ability to bring anyone forward to talk about intent. That was all in the rearview mirror. I briefed law of the case because law of the case was controlling. The judge did not meet the standard to ignore law of the case, and I never had a chance to come forward with evidence which would have shown conclusively that's what this document is intended to do. It was wrong for the district court to impugn just its theory of what the parties intended. Nobody argued ambiguity below. There was no competent evidence before the trial court. My adversary held forth without any evidence whatsoever with respect to what the document would mean, but that had no evidentiary support, and when I tried to rebut it, I was shut down. That's not the way this is supposed to go. That's a clear reading case, and on a clear reading, if the New York standard is a manifest expression of an obligation, that certainly is not here. Now, the judge also erred because he said it's a remedy. Well, it can't be a remedy. There's no New York case which has found an attorney's fees provision to be a remedy. The cases that are cited to you talk about arbitration provisions and choice of law. They do not talk about attorney's fees provisions, and think about the ramifications of a decision that goes that way. You would summarily, in this case, convert every contract in New York under New York law which used the words rights as conferring both rights and obligations because now it would be a remedy that would transfer over even if the parties had not assumed, not agreed to assume the attorney's fees provision. So does that mean you end up in a better position than the assignor, Wachovia? Yes. Doesn't that strike you as incongruous that an assignee can end up in a more favorable position than an assignor? No. In the contract? No. No. It's not an improvement of position because I haven't changed the nature of the contract. The contract itself says that part that you can assign rights or obligations or any part thereof. And it says that the assignee will only be liable for those things that are assigned. That was what was agreed to between Wachovia and Dexia. So we have not improved our position vis-à-vis the contract. I've just stepped into the rights that Dexia freely granted. It's also consistent with the nature of the — this is a REMIC trust. They don't pick up liabilities. They don't indemnify. We didn't get a chance to put any of that in the record either. That's totally consistent with the way these deals work. But it's not your traditional — the cases that go off on remedy, when they talk about arbitration or choice of law, they're saying you can circumvent that aspect of the contract by allowing the assignment to not include those. That's not true with attorneys' fees provisions. You won't find a New York case. The only two cases they cite for attorneys' fees being a remedy are one line out of a Maryland case, applying Maryland law, and a California case that interpreted a statute — and this is critical. The California case interpreted a statute which had bilateral attorneys' fees provision, and California, unlike New York, has a presumption that when there's a one-way assignment, it's bilateral, by statute. And if you read that case, it talks about attorneys' fees as an obligation, not a remedy. Thank you, Mr. Cooper. Thank you. You've reserved some time. Good afternoon. May it please the Court, Kenneth Schachter for Dexia. In my argument, I'd like to focus on the text and the context of the agreement because I think that is really the key issue in this case. I don't think the law of the case has any traction, given especially that this Court is itself equipped to answer the ultimate question of whether Judge Shinlin was right or whether Judge Inglemeyer was right. Leave aside that Judge Shinlin was answering a completely different question. So the law of the case, I think, has no teeth whatsoever. Nothing in the MLPA or the PSA indicates that as part of this securitization, the straightforward bilateral attorneys' fee provision in Section 16 was transformed into a one-way provision for the benefit of the trust only. And if we look at Section 16, that becomes entirely apparent. Sorry, Section 18, which is the assignment provision in the MLPA, and that's found at Appendix 1560, the full provision. What it provides is that Dexia is not permitted. Dexia, our client, we are not permitted to make an assignment without the express consent of Wachovia, the other party. But Wachovia is expressly permitted to assign its interest under this agreement, a broad term, to effectuate the purpose of the securitization, its interest. And it further provides that upon assignment, the trust will succeed to the rights and obligations of Wachovia. That is in Section 18. That's what defines what the parties intended could happen. What Section 18 does not say, conspicuously does not say, is that Dexia's rights, Dexia's remedy in the event of litigation to recover attorneys' fees if it prevailed, were being extinguished by an assignment. You would think if that type of significant change was going to be made by way of assignment, that the agreement would say, by the way, Dexia, just so you know, if we make an assignment, we can wipe out your attorneys' fee recovery rights. In our view, and Judge Engelmeyer agreed with us, the attorneys' fee provision is not an obligation. An obligation is a contractual covenant. I have to pay money. I have an obligation to send you something. It is part of a remedial provision, very similar to an arbitration clause. And just as a party cannot wipe you have no law directly supporting that. No, we don't. Not in New York. We don't. The issue has not come up. And if we did, of course, we would have decided it. So the issue hasn't come up. But in my mind, it is very similar to procedural issues like choice of law, choice of venue, arbitration clauses. None of those can be transformed by an assignment. If they could, there would be an awful lot of mischief with assignments being made to avoid those obligations. Could you address your adversary's argument that the Pulling and Servicing Agreement contains some explicit assignments of obligations that, unlike what it does with respect to the attorneys' fees? And those would be superfluous if your argument were to prevail. Why is that wrong? Sure. Well, a few things. Number one, the language of Section 2.01, which is at 1181 of the appendix, the language is, as Judge Livingston and Judge Engelmeyer both agreed, not entirely elegant in this regard. It refers to the depositor being able to assign all right, title, and interest of the depositor, that's Wachovia, in and under the loans and the rights under this agreement. So clearly the drafting was not very precise. But if you look at what these obligations that were assigned were, I think this is critically important, they are enumerated in Section 2.01. And let me focus on a few of these to explain why I think this argument has absolutely no teeth. One of the provisions that was assigned is Section 10 of the MLPA. What is Section 10? Section 10 is an appendix 1559. It is four lines long, and it is a covenant of the purchaser. It's a covenant of Wachovia. So that was one of the enumerated provisions that was assigned. That's all Section 10 is. It's a covenant that says the purchaser will deliver copies of the prospectus supplement on the offering memorandum to Dexia. That's all it says. That's the covenant. So if that was one of the things that was assigned, there's no right, there's nothing good about that provision for the trust. That was only an obligation of Wachovia to Dexia. And that was assigned. So the idea that this assignment somehow weeded out obligations and rights and severed them really doesn't make any sense. Another provision in here is an amendment provision, Section 19. That was also assigned. Is the trust actually saying that even though the amendment says, amendments are effective only if in writing, standard provision, boilerplate provision, is the trust saying that it did not assume the obligation to amend only in writing? That would be ridiculous. And yet that is the consequence of its argument. It is saying that somehow it sloughed off anything that it finds inconvenient or problematic and only assumed the good parts of this. And that just doesn't make any sense. And it particularly doesn't make any sense in the context of this transaction, which Judge Engelmeyer took some time to think about. Remember that this transaction involves essentially a simultaneous transaction where Dexia sells the loans to Wachovia. Wachovia is a pass-through special purpose entity. Its only purpose in life is to serve as a conduit for these loans. It takes in the loans and it moves them on to the trust. Your adversary points out that that occurred over the month of October. It was not simultaneous. Well, Judge Carney, fair point. But I think the key here is that the MLPA is signed as of, I don't know when it was really signed, but as of October 1st. And the pooling service, the closing takes place October 31st. I don't know if I said October 1st, October 31st. So we have a 30-day period. But what dispute could possibly arise in a 30-day period that would trigger an attorney's fee obligation on the part of Wachovia? For example, the main thing that the trust cites is the possibility that there could be a defective loan that was transacted and Wachovia could give notice of that. Well, the MLPA says you have to give 90 days notice, a 90-day opportunity to cure any defective loan. You can cure it, you can substitute it with a different loan, or you can pay back the money. You have 90 days to do that. So nothing could happen in 30 days, let alone litigation in 30 days, leading to one party prevailing and getting an attorney's fee award. So that is not, that makes no sense. It really is not a realistic possibility that anything could happen within 30 days that would trigger either Dexia or Wachovia to have the right to attorney's fees. It just takes too long for this process to unfold. So we simply don't think that makes any sense. And, again, the trust had a limited lifespan, and rather Wachovia had a limited role and a limited lifespan. Its only raison d'etre was really to affect this transaction. Briefly, although Mr. Cross didn't address it, let me talk briefly about the issue of offset, because that's another argument that has been made. The trust argues that there should be an offset for the recovery and the settlement of this litigation that Dexia brought against its former counsel. We don't think any offset would be appropriate for two main reasons. Number one, the agreement doesn't say anything about an offset, and some agreements do. This one doesn't. And New York law is pretty clear on this point. New York law does not permit an offset to an attorney's fee award based on a collateral recovery from another party, insurance company being the classic example. So if an insurer pays your fees... We understood that there was like a $64,000 difference as to which, you know, the status was a little less clear. Right, that's true. So the $64,000 is the net recovery. So Dexia recovered a little over a million dollars in this settlement, but it didn't come cheap. It didn't come free. It had to litigate for three years to get it, and it costed about over a million dollars in litigation costs to get that $1.1 million recovery. So the net recovery is that $65,000. So in our view, and Judge Hengemeyer agreed, in a footnote I believe he said, he doesn't think any offset is permitted or appropriate, but if there was to be any offset at all, it would be limited to that small net recovery, and we certainly agree with that. So unless the Court has any other questions, I'll conclude by asking the Court to affirm the judgment. Thank you. Thanks, Mr. Sheikh. Mr. Cross, you've reserved two minutes. I want to be very clear about this because my adversary ignored the provision again, as did Judge Hengemeyer. Section 2.03 is the controlling provision that I was talking about that restates the obligations. It's not 2.01. And if you read 2.03, you'll see that it's a complete restatement of the material obligations under the MLPA, and that's critical. So if in 2.01 rights and obligations were being transferred, there'd be no reason for those lengthy provisions to be restated in the PSA. There's a built-in suspenders approach to drafting, particularly when drafting is happening fast. You know, these are complicated transactions. It doesn't hurt to put it in, but that doesn't necessarily, we can't infer necessarily, that that means no other obligation. And your point, Your Honor, goes to exactly why law of a case is not something to be backhanded and dismissed here. That's not, all that testimony you got about what the party's expectations were and what you just surmised with respect to perhaps it's this way, I was deprived the opportunity to put that in the record. Because I can bring in any industry expert and they're going to tell you that that's not the case. It's there for a reason because it's only the rights. And to your question, if you look at Section 18 with respect to interests, it talks about the assignments as may be required to effectuate the purposes of the pooling and servicing agreement. So the assignment is, the pooling and servicing agreement is the controlling document. That's what's driving the transaction, not the MLPA. And Dexia bargained for the right to review that language. Now, they certainly knew, New York law is crystal clear. You have to unequivocally say you're assuming the obligations. It's not here. That's on Dexia. They knew what New York law was when they reviewed the document. You need to be very careful about this case. It breaks grounds in no less than six ways. I wrote them down so I would not forget. This would be the first case that imposes an obligation to pay without a statement of unequivocally that obligations have been assumed in New York. This would be the first New York case to ever interpret the word right to mean rights and obligations in the context of an assignment. This would be the first case in New York to ever characterize an attorney's fee provision as a remedy. It never has occurred. This would be the first case in New York to impose a bilateral obligation to pay attorney's fees in a CMBS case. You can review them. There are none because that's not what happens. This is the first case that would disregard making findings relative to whether law of the case should be followed on just the discretion and the whim of the trial judge because it's about one sentence is what it gets out of the opinion. And it would be the first case that's allowed a windfall with respect to the recovery of attorney's fees. This isn't an insurance case. We're not seeking the $750,000 they were paid from Lloyds. We're seeking the $1.5 million that they were specifically paid in settlement of the malpractice case to compensate them for the attorney's fees incurred in this case because had I been successful in front of you a year ago, they would have received $4.2 million. But that $4.2 million settlement was reduced to $1.5 million because it was intended to compensate them for the attorney's fees that they incurred in this case. And that is not a collateral source that they independently contracted for. That's a source of a separate recovery. And the case that we... Thank you. Thank you, Mr. Corse. Thank you. We are in recess. Court is now in recess.